*CJP Supp. 169 Opinion
HANLON, Chairperson.
This disciplinary matter concerns former Judge Luis A. Cardenas. Judge Cardenas served as a judge of the Orange County Municipal Court from March 30, 1976, to January 12, 1980, and as a judge of the Orange County Superior Court from January 12, 1980, to March 31, 1996. As a retired judge he sat on assignment in the Orange County Superior Court through December 31, 1996.
For the reasons set forth in this decision, the Commission on Judicial Performance finds that Judge Cardenas violated canon 2 of the California Code of Judicial Ethics as his actions in several cases gave the impression that two attorneys were in positions to influence him. The commission concludes that Judge Cardenas’s actions constitute “conduct prejudicial to the administration of justice that brings the judicial office into disrepute.” (Cal. Const., art. VI, § 18, subd. (d).) Judge Cardenas is hereby publicly admonished.
PROCEDURAL HISTORY
' Formal proceedings in this matter commenced with the filing on April 19, 1999, of a notice of formal proceedings. A first amended notice of formal proceedings was filed on November 4, 1999.
As provided by rule 121(b) of the Rules of the Commission on Judicial Performance, the Supreme Court appointed three special masters to conduct an evidentiary hearing and to prepare a written report. The special masters who conducted the hearing and issued the report were Judge Rudolph R. Loncke, presiding, of the Sacramento County Superior Court, Judge Judith D. Ford of the Alameda County Superior Court, and Judge William J. Howatt, Jr., *CJP Supp. 170 of the San Diego County Superior Court. The evidentiary hearing was held in Santa Ana commencing January 31, 2000, and concluding February 7, 2000. The special masters filed their report to the commission on May 4, 2000.
Following the receipt of objections and briefs from Judge Cardenas and the Office of Trial Counsel, the matter was orally argued before the commission on August 29, 2000. Arguments were presented by Mr. William Smith, trial counsel, and by Judge Cardenas on his own behalf.
FINDINGS AND CONCLUSIONS
The first amended notice of formal proceedings, with two exceptions,[1] alleged that Judge Cardenas violated the California Code of Judicial Conduct[2] by taking a number of actions between 1994 and the end of 1996 on behalf of two attorney friends, Leonard Basinger and Basinger’s daughter, Ginger Larson Kelley.
A. The Friendship.
There is clear and convincing evidence that Judge Cardenas had a special friendship with Leonard Basinger and Ginger Larson Kelley. Judge Cardenas has known Leonard Basinger since they worked together in the Orange County District Attorney’s Office in the early 1970’s. At the request of Basinger’s counsel and pursuant to subpoenas, Judge Cardenas testified as a witness to Basinger’s good character in California State Bar proceedings in 1987 and 1991.
*CJP Supp. 171 Judge Cardenas testified that in 1993, when Kelley was admitted to the practice of law, she approached him and he offered some assistance in the incipient stages of her career. He recommended her to the district attorney’s office and to a private attorney. He further testified that Kelley would call him at home seeking legal advice. Although the calls became annoying, Judge Cardenas refrained from telling her that because he did not want to hurt her feelings.
In March 1994, Judge Cardenas performed the marriage ceremony for Ginger Larson and Bill Kelley. After the ceremony in California, Judge Cardenas flew with the Kelleys to England and performed a ceremonial wedding service in Bath, England. Basinger and his wife also attended the wedding service. In 1995, Judge Cardenas led a group of five or six couples, including the Basingers, on an antiquities tour of the Greek Islands and portions of Italy. Judge Cardenas paid for the Basingers’ airfare to and from Europe in order to offset the financial benefit, if any, of meals or drinks that the Basingers might pay for during the tour.
The commission finds that Judge Cardenas’s friendships with Basinger and Kelley were of a different nature than his acquaintances with other attorneys. There is, of course, nothing wrong with Judge Cardenas having a friendship with Basinger or Kelley. Judge Cardenas, however, was obligated to consider the friendship whenever either Basinger or Kelley appeared before him.[3]
B. Specific Incidents.
The commission determines that the evidence as a whole shows that Judge Cardenas engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute by making himself available to Basinger and Kelley and granting their requests in such a way as to suggest that they were in a special position to influence him.
*CJP Supp. 172 This conclusion is demonstrated by the following six incidents that were charged in the first amended notice of formal proceedings.
1. Vargas. Mr. Vargas had been held to answer on seven counts of insurance fraud and grand theft. On June 10, 1994, Vargas appeared before Judge Kathleen O’Leary, to whom the case was assigned. Bail was discussed with Vargas’s attorney, and Judge O’Leary declined to reduce bail. Judge O’Leary set a trial date of August 8, 1994.
In the evening of Thursday, June 23, 1994, Basinger—who was not Vargas’s attorney of record—telephoned Judge Cardenas at his home and requested that Vargas be released on his own recognizance because he had a life-threatening health problem that required his immediate release for appropriate medical treatment. Judge Cardenas contacted the detention release unit and ordered that Vargas be released on his own recognizance. Vargas was ordered to appear in Judge O’Leary’s court on August 8, 1994, but he never appeared.
Judge Cardenas did not contact Judge O’Leary or the district attorney. He also did not make an attempt to verify the medical emergency with jail personnel. The masters noted that, although Judge Cardenas acted in good faith, it was improper “to have relied on the word of Basinger as to Vargas’ medical emergency without making a substantial effort to contact jail medical personnel to confirm the ‘emergency.’ ”
The masters found that by not making a diligent attempt to verify the alleged medical problem, Judge Cardenas created the appearance of impropriety in violation of canon 2.[4] This appearance was heightened by the fact that Judge Cardenas acted after hours on the representation of his friend without contacting the judge to whom the case was assigned, as well as by the subsequent publicity that resulted from Vargas’s failure to appear. The commission concludes that Judge Cardenas’s actions constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
2. Bailey. On Friday, December 22, 1994, Bailey was arrested on a charge of driving under the influence of alcohol. He was also arrested on three *CJP Supp. 173 outstanding warrants, one of which was a “no bail” warrant. Late that night, Basinger contacted Judge Cardenas and asked him to release Bailey on his own recognizance. Shortly after midnight Judge Cardenas contacted the detention release unit. Although he was informed of the no bail, out-of-county warrant, Judge Cardenas ordered Bailey released on his own recognizance.
Judge Cardenas’s willingness to act late at night on the ex parte representation of Basinger, following the Vargas incident and despite a “no bail” warrant, created the appearance of impropriety in violation of canon 2. Judge Cardenas’s actions constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
3. Calderon. On May 31, 1995, Calderon was arrested for spousal battery and bail was set at $50,000. At 6:00 in the evening, Judge Cardenas, who was not the duty magistrate, contacted the detention release unit at the request of Kelley. The detention release officer advised Judge Cardenas that Penal Code section 1270.1 required a hearing in open court prior to any own recognizance release of a person charged with domestic violence and that the prosecutor was entitled to two court days’ written notice. Nonetheless, Judge Cardenas ordered Calderon released on his own recognizance.
Judge Cardenas had been advised a week earlier of the statute and had questioned its constitutionality. The masters found that Judge Cardenas had done no research between his first learning of Penal Code section 1270.1 and his order releasing Calderon. The masters concluded that Judge Cardenas’s failure to research the constitutionality of the code section “after having had a sufficient opportunity to do so, neither upheld the higher standards expected of a judge (Canon 1) nor demonstrated the respect for and compliance with the law (Canon 2A).”
The commission concurs that Judge Cardenas’s actions created an appearance of impropriety in violation of canons 1 and 2.[5] The commission concludes that Judge Cardenas’s actions constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
4. Warner. On February 20, 1996, Warner pled guilty to possession for sale of a controlled substance and an enhancement count. Kelley represented *CJP Supp. 174 Warner. Judge Didier sentenced Warner to a four-year suspended prison sentence, with Warner to be confined for one year in the Orange County jail and to be on felony probation for three years.
Between February 20 and 27, 1996, Basinger asked Judge Cardenas to release Warner on his own recognizance. He then requested that Judge Cardenas modify Warner’s probation to allow him to serve his previously imposed jail term in a drug rehabilitation program rather than the county jail. Judge Cardenas told Basinger that he needed a full medical report and a personal appearance from Warner. Basinger provided a medical report and Warner appeared in Judge Cardenas’s courtroom. On February 27, 1996, Judge Cardenas issued an order modifying Warner’s probation to allow him to serve his jail time in a drug rehabilitation facility.
The masters noted that after Judge Cardenas entered his order, “he discovered that the previous judge on the Warner case had already reviewed the medical information on the defendant (which was in a sealed envelope in the court file).” Judge Didier had declined the relief requested by Basinger. The masters found that Judge Cardenas “did not take sufficient time to read the file and investigate the Warner matter before acting on counsel’s request.” In addition, the evidence shows that Judge Cardenas failed to contact Judge Didier concerning Basinger’s request, to notice a probation modification hearing, and to state his reasons for the modification on the record.
Judge Cardenas’s willingness to act in this matter and to grant the relief requested by Basinger violated canon 2. It created the appearance that Basinger was in a special position to influence the judge. The commission concludes that Judge Cardenas’s actions constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
5. Bass. On March 1, 1996, Bass was arrested for possession of a controlled substance for sale and bail was set for $25,000. On Saturday, March 2, 1996, Basinger contacted Judge Cardenas, who was on vacation in Hawaii, and requested that the judge order Bass released on his own recognizance or reduce the bail. Judge Cardenas contacted the detention release unit and ordered that Bass’s bail be reduced to $5,000.
The masters noted that the circumstances of Basinger’s request while the judge was on vacation in Hawaii “should have put [Judge Cardenas] on notice that responding favorably would constitute prejudicial misconduct. [Judge Cardenas] failed to inform Basinger that it would be improper for him to consider such a request while on vacation and failed to direct Basinger to the duty magistrate.”
Judge Cardenas’s accommodation of Basinger while the judge was on vacation in Hawaii violated canon 2 as it gave the impression that Basinger *CJP Supp. 175 was in a special position to influence the judge. Judge Cardenas’s actions constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
6. Alvarez. Alvarez was in custody charged with spousal battery and a violation of probation with a total bail of $35,000. On Thursday, January 4, 1996, Basinger contacted Judge Cardenas requesting that he reduce the bail. The masters found that Judge Cardenas contacted the detention release unit and ordered bail reduced to $5,000, stating that he had received additional information from the victim. Judge Cardenas failed to comply with Penal Code section 1270.1.
The masters found that Judge Cardenas’s failure to comply with Penal Code section 1270.1 was improper. Judge Cardenas’s representation that he had received additional information from the victim was misleading as he had only spoken with Basinger. Judge Cardenas’s willingness to rely on Basinger’s representations and to violate Penal Code section 1270.1 created an appearance of impropriety in violation of canon 2. Judge Cardenas’s actions constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
The commission has reviewed the remaining allegations in the first amended notice of formal proceedings. Although trial counsel has reasonably objected to the masters’ conclusions, the commission has determined to accept the masters’ conclusions on the remaining allegations, many of which are cumulative. Further elaboration on these allegations and trial counsel’s objections is unnecessary as it would not affect the commission’s perspective on Judge Cardenas’s behavior or its determination of the appropriate level of discipline, when all the circumstances of the case are considered including Judge Cardenas’s status as a retired judge.
DISCIPLINE
The Supreme Court has indicated that the purpose of a commission disciplinary proceeding is not punishment, “ ‘but rather the protection of the public, the enforcement of rigorous standards of judicial conduct, and the maintenance of public confidence in the integrity and independence of the judicial system.’ ” (Broadman v. Commission on Judicial Performance, supra, 18 Cal.4th at p. 1112, quoting Adams v. Commission on Judicial Performance (1995) 10 Cal.4th 866, 912 [42 Cal.Rptr.2d 606, 897 P.2d 544].) The court has further noted that “ ‘[c]hoosing the proper sanction is an art, not a science, and turns on the facts of the case at bar.’ ” (Broadman, supra, 18 Cal.4th at p. 1112, quoting Furey v. Commission on Judicial Performance (1987) 43 Cal.3d 1297, 1318 [240 Cal.Rptr. 859, 743 P.2d 919].)
*CJP Supp. 176 In determining the appropriate discipline, the commission cannot ignore that Judge Cardenas retired four years ago in March 1996, after serving 20 years as a judge. The commission has not previously disciplined Judge Cardenas. The record supports the masters’ perspective that Judge Cardenas “was a hard working judge who made himself available beyond the call of duty to just about anyone who asked, day and night.” They noted that he took his job as judge “seriously and was extremely well respected by prosecutors, public defenders, private attorneys and law enforcement.” Indeed, there is no evidence that Judge Cardenas acted with any corrupt purpose or intent, nor evidence that he ever received, or expected to receive, anything from Basinger or Kelley.
Judge Cardenas’s actions, however, violated canon 2. Canon 2 requires that a judge pay attention not only to his or her actions but also to the reasonable appearances flowing from those actions. Although the masters noted that Judge Cardenas did not act in bad faith or with any corrupt purpose, they recognized that despite Judge Cardenas’s subjective good faith, his action in the Bass matter constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute. A judge must avoid the appearance of impropriety as well as actual impropriety.
The commission concludes that a public admonishment is the appropriate discipline. Judge Cardenas continued to entertain requests from Basinger and Kelley even after the Vargas incident, which the masters found should have made him more cautious. The masters opined: “The record demonstrates that Basinger and Kelley took advantage of [Judge Cardenas’s] availability to an extent that should have raised a red flag in the eyes of [Judge Cardenas], [Judge Cardenas’s] continuing personal association with these two attorneys is simply inexplicable and gives rise to a spectre of impropriety in regard to his actions which affected these attorneys or their clients. Respondent never asked himself, ‘How would it look to the objective observer that I continue to act on requests of Basinger and Kelley’ even when prudence would have dictated to him greater care in dealing with these attorneys.” Canon 2 requires that a judge avoid the appearance of impropriety as well as actual impropriety.
A public admonishment is necessary to guide Judge Cardenas[6] and to reassure all those in Orange County who were aware of the above described *CJP Supp. 177 incidents, as well as the bench and the public, that Judge Cardenas’s accommodation of Basinger and Kelley was contrary to the Code of Judicial Ethics. Many of Judge Cardenas’s actions followed ex parte communications. Shaman et al. in Judicial Conduct and Ethics (3d ed. 2000) pages 159-160, note: “Ex parte communications deprive the absent party of the right to respond and be heard. They suggest bias or partiality on the part of the judge. Ex parte conversations or correspondence can be misleading; the information given to the judge ‘may be incomplete or inaccurate, the problem can be incorrectly stated.’ At the very least, participation in ex parte communications will expose the judge to one-sided argumentation, which carries the attendant risk of an erroneous ruling on the law or facts. At worst, ex parte communication is an invitation to improper influence if not outright corruption.” (Fns. omitted.) These ills exist, or appear to exist, regardless of a judge’s intent when entering into an ex parte communication. Furthermore, the likelihood of harm from an ex parte communication or any other appearance of impropriety is such that the incident tarnishes the judiciary even if there was no direct harm or prejudice.
The commission is mindful of Judge Rothman’s warning that “Judicial personality is important to the fabric of the judicial system, and it would be dangerous to that system were the judiciary to become a group of faceless bureaucrats who attempt to fit into a mold in order to stay out of trouble.” (Rothman, Cal. Judicial Conduct Handbook (2d ed. 1999) §1.52, p. 29.) Neither the first amended notice of formal proceedings nor this decision challenges either Judge Cardenas’s continuing friendship with Basinger and Kelley or the informality of Judge Cardenas’s methods. Rather, the commission holds that, although Judge Cardenas had considerable latitude to choose his friendships and to adopt his own judicial “style,” he remained responsible for the appearances created by his choices and actions. Judge Cardenas, by being available to his friends after hours, by relying on their ex parte communications, and in failing to follow statutes and practices designed to limit a judge’s discretion, violated canon 2 by perpetuating the appearance that Basinger and Kelley were in special positions to influence him.
A public admonishment in this case is consistent with discipline imposed by the commission in other cases. (See, e.g., Inquiry Concerning Shaw (2000) No. 156, Decision and Order Imposing Public Admonishment [48 Cal.4th CJP Supp. 125], and Inquiry Concerning Smith (Nov. 25, 1996).)
*CJP Supp. 178 This decision shall constitute the order of public admonishment of Judge Cardenas.
Commission members Justice Daniel M. Hanlon, Mr. Michael A. Kahn, Ms. Lara Bergthold, Mr. Mike Farrell, Judge Madeline I. Flier, Ms. Gayle Gutierrez, Mr. Patrick M. Kelly, Mrs. Crystal Lui, Judge Rise Jones Pichon, and Ms. Ramona Ripston voted in favor of this public admonishment. There is currently one public member vacancy.

 Count two of the first amended notice of formal proceedings concerned Judge Cardenas’s order in November 1993 finding that a certain person had completed a specific program concerning drinking and driving, and his order in April 1994 to the director of the school that offered the program. The masters found that Judge Cardenas was mistaken in issuing the subject orders, but that the mistakes did not constitute misconduct. They further noted that Judge Cardenas, when informed of there being a disputed factual issue, recused himself in a timely manner.
The first amended notice of formal proceedings also alleged that Judge Cardenas, while sitting on assignment, at the request of his wife’s sister—who was a deputy public defender— ordered a cousin of his wife released on his own recognizance. The masters found that Judge Cardenas had a clear duty not to act on behalf of a relative and violated canon 2B by allowing a family relationship to influence his judicial conduct. They concluded that Judge Cardenas’s actions constituted prejudicial conduct.

 The California Code of Judicial Conduct was replaced by the California Code of Judicial Ethics, effective January 15, 1996. (See Broadman v. Commission on Judicial Performance (1998) 18 Cal.4th 1079, 1097, fn. 5 [77 Cal.Rptr.2d 408, 959 P.2d 715].) The Code of Judicial Ethics did not change the ethical standards at issue in this case, and the citations to canons in this decision are to the Code of Judicial Ethics.

 Canon 3E, “Disqualification,” states: “A judge shall disqualify himself or herself in any proceeding in which disqualification is required by law. In all trial court proceedings, a judge shall disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no actual basis for disqualification.” The advisory committee commentary notes: “under this rule, a judge is disqualified whenever the judge’s impartiality might reasonably be questioned, or whenever required by the disqualification provisions of the Code of Civil Procedure.” Section 170.1 of the Code of Civil Procedure sets forth the legal standard for when a judge shall be disqualified. Subdivision (a)(6) provides that a judge shall be disqualified if: “For any reason (A) the judge believes his or her recusal would further the interests of justice, (B) the judge believes there is a substantial doubt as to his or her capacity to be impartial, or (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification.”

 Canon 2 is entitled “A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge’s Activities.” (Some capitalization omitted.) Subsection A is entitled, “Promoting Public Confidence” and states: “A judge shall respect and comply with the law . .. and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.”
Canon 2B(1) is entitled “Use of the Prestige of Judicial Office” and states: “A judge shall not allow family, social, political, or other relationships to influence the judge’s judicial conduct or judgment, nor shall a judge convey or permit others to convey the impression that any individual is in a special position to influence the judge.”

 Canon 1 is entitled “A Judge Shall Uphold the Integrity and Independence of the Judiciary” (some capitalization omitted) and reads, in relevant part: “An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.”

 In his argument before the commission Judge Cardenas continued to defend his conduct by arguing that after the Vargas incident no other defendant whom he ordered released on his or her own recognizance or on bail failed to appear. Judge Cardenas violated canon 2, however, because he acted in such a way that it reasonably appeared that Basinger and Kelley were in special positions to influence him. This appearance arose at the time of Judge Cardenas’s actions and persisted regardless of whether the defendants showed up at the subsequent court hearings.